Matthew J. TROY, Jr., Plaintiff,

v.

The PEOPLE of the STATE of NEW YORK, Defendants.

No. 79 C 3229.

United States District Court,
E. D. New York.

Jan. 24, 1980.

Lubash & Gardner, David B. Lubash, Jamaica, N.Y., for plaintiff.

Deborah Carlin Stevens, Dist. Atty., Queens County, Joan L. Craig, Asst. Dist. Atty., Kew Gardens, N.Y., for defendants.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

On December 21, 1979, plaintiff filed a complaint along with an order to show cause seeking preliminary relief from this court against execution of a state court sentence. Upon agreement of the parties the order to show cause was adjourned to January 16, 1980, and later to February 6, 1980, at which time the court was also to hear argument on defendant's motion to dismiss, made orally at the December 21, 1979 initial hearing on the order to show cause. On Monday, January 21, 1980, the Appellate Division of the State Supreme Court affirmed plaintiff's state court sen-

tence, and execution of sentence was set to begin on Friday, January 25, 1980. Plaintiff applied for a stay of execution of sentence to Judge Meyer of the New York Court of Appeals, who will hear argument on Friday morning, January 25, 1980. Plaintiff then asked this court for expedited consideration of his order to show cause and, accordingly, the February 6, 1980 argument was held yesterday at 5:00 p. m. Based on the argument and the papers submitted, and for reasons set forth below, plaintiff's motion for preliminary relief is denied and defendant's motion to dismiss is granted.

### FACTS

From 1964 through 1976, plaintiff handled the accounts of some thirty estates in the capacity of executor or attorney. The Internal Revenue Service began to investigate plaintiff's dealings with some of these estates around 1974. In February, 1976, defendant was subpoenaed to testify before a federal grand jury investigating the accounts of these estates. Before appearing, plaintiff was informed of charges to be brought against him before the grand jury, and was offered a plea agreement with respect to these charges, which he accepted. The terms of the plea offer and agreement were reduced to writing in a "Memorandum Agreement" dated May 6, 1976. The Memorandum Agreement outlined the nature of the federal investigation into plaintiff's transactions with the estates, and the relationship between these transactions and plaintiff's federal income tax returns for 1970, 1971, and 1972. The agreement then called for plaintiff to waive indictment and plead guilty to one count of a three count felony information to be filed, each count to involve income tax violations. The one count guilty plea was to be in full satisfaction of "all criminal charges that could have been brought by the United States Attorney for the Eastern District of New York against Mr. Troy with respect to the aforesaid financial activities and transactions". The other two counts were to be dismissed upon sentencing.

The Memorandum Agreement stated that "all promises and understandings between the parties are embodied in this agreement". However, it appears that after the signing of the agreement, the Assistant United States Attorney in charge of the investigation promised plaintiff that certain information resulting from the investigation would not be disclosed to other investigative authorities. Plaintiff was particularly concerned at that point with possible prosecution by state authorities for his transactions with the estates. "[The Assistant U. S. Attorney] related that no consideration was given by the federal government as to any state charges or grand larcenies and, that no promises were made to Troy concerning any state charges, even though the topic did continually come up." Report of Hon. Howard Jones to the Appellate Division, at 8 (Ex. Q attached to the complaint). However, even if no formal "promises" were made, the Assistant United States Attorney did later state, in public, that a state prosecution based on plaintiff's transactions with the estates would be "inappropriate". July 15, 1977 decision of Hon. Howard Jones, at 4 (Ex. 4 attached to the complaint).

On July 2, 1976, plaintiff pleaded guilty to one count of the criminal information, before the late Judge Judd of this court. On September 29, 1976, plaintiff appeared for sentencing before the undersigned, to whom the case was assigned after the death of Judge Judd. A sentence of two years imprisonment (two months to be served in a jail type institution, with the remainder of the imprisonment suspended), five years probation, and a $5,000 fine was imposed. At sentencing, the undersigned made the following statement:

In making my determination, however, I have attempted to confine my consideration to the fact that we are dealing here solely with a tax violation. I have not considered the source of the funds, which were declared on the tax return. I have not considered the—well, I view the circumstances of how that money was obtained to be the concern of other authorities than myself. That must be con-

sidered and disposed of in whatever way they may think appropriate. Minutes of sentencing, p. 22.

After Mr. Troy was sentenced on the one income tax count, the other two counts of the information were dismissed at the request of the government. No other statements or actions at the sentencing dealt with future prosecution of Mr. Troy by state authorities for crimes connected with his handling of the estates.

In January, 1977, a Queens County grand jury returned an indictment charging Mr. Troy with four counts of grand larceny second degree, each connected with his handling of certain of the above-mentioned estates. On April 27, 1977, Mr. Troy moved to have the indictment dismissed based on various grounds: (1) Double jeopardy under the United States Constitution, based on the fact of his previous prosecution and conviction in federal court; (2) Double jeopardy under the New York State Constitution and Article 40 of the New York Criminal Procedure Law; (3) Untimeliness of prosecution; (4) Insufficient evidence before the grand jury; and (5) General interests of justice. The state court justice to whom the motion was made considered each claim in detail and, in a well-reasoned and thorough opinion, found each claim to be without merit. July 15, 1977 decision of Justice Howard Jones (Ex. 4 attached to the complaint).

On July 29, 1977, Mr. Troy instituted a proceeding in the Appellate Division of the State Supreme Court under Article 78 of the New York Civil Practice Laws and Rules, in which he sought an order in the nature of a writ of prohibition, directing Justice Jones to prohibit further prosecution of the state's case against him. The Appellate Division, on February 9, 1978, remitted the proceeding to the trial term for a trial of certain factual issues. Trial was held and on March 17, 1978, Justice Howard Jones submitted his "Report to the Appellate Division", Ex. Q attached to the complaint in this case. Based on this report, which was accepted by the Appellate Division as correct, the Appellate Division

held that Article 40 of the CPL did not bar prosecution under any of the four counts of the state indictment. Order with attached decision slip, issued July 17, 1978 (Ex. R attached to the complaint in this case).

On October 10, 1979, plaintiff pleaded guilty to the grand larceny indictment. On November 29, 1979, he was sentenced to a term of imprisonment of 26 weekends, to begin on December 1, 1979 and run through May 29, 1980. Execution of the sentence was stayed to December 29, 1979 pending an appeal from the conviction to the Appellate Division. As explained in the first paragraph of this memorandum and order, there followed the filing of this action on December 21, 1979, the adjournment of plaintiff's order to show cause and defendant's cross-motion to dismiss, and, most recently on January 21, 1980, the affirmance of Mr. Troy's conviction by the Appellate Division of the Supreme Court.

## DISCUSSION

At the outset, the court is met with the problem of interpreting plaintiff's enigmatic complaint. In violation of the FRCP, the complaint fails to set forth any jurisdictional grounds, and also fails to specify any claim entitling plaintiff to relief. The closest thing to a cause of action alleged in the complaint occurs in the fifth paragraph:

Upon information and belief, by dismissing said Article 78 Proceeding at the Appellate level, the defendant violated the Constitutional rights of the plaintiff as set forth in the Fifth and Fourteenth Amendments thereto. (The Briefs and Arguments of the Plaintiff as submitted to the State Court are annexed hereto and marked as Exhibit "5".)

The state defendant interprets this claim as follows:

Plaintiff  *  *  *  contends that the Appellate Division's dismissal of his Article 78 proceeding violated his rights under the fifth and fourteenth amendments to the Constitution (Complaint Paragraph 5). However, the relief sought by plaintiff relates to the State judgment of conviction. It therefore would appear that

his instant claim is in actuality that his constitutional rights were violated by the State prosecution itself, as opposed to the dismissal of his Article 78 proceeding, and that his arguments before his Court are identical to those advanced by him before, and rejected by, the Appellate Division. Defendant's memorandum at 3. As for jurisdiction: "Presumably, [plaintiff] grounds his claim on 42 U.S.C. § 1983, and invokes this court's jurisdiction under 28 U.S.C. § 1343." Defendant's memorandum at 2.

This court interprets plaintiff's complaint differently. The complaint is best treated as a habeas corpus petition challenging a state court conviction under 28 U.S.C. § 2254, since it seeks release from future confinement, not monetary damages. The alleged grounds for relief are taken to be those *federal* constitutional claims asserted in the state court motion to dismiss and subsequent Article 78 proceeding, namely violation of the Double Jeopardy Clause of the Constitution and a due process violation based on breach of the plea agreement by the Assistant U. S. Attorney.

Treating the complaint as a petition for habeas corpus renders moot defendant's argument that an action under 42 U.S.C. § 1983 would be collaterally estopped by the prior state court determinations. While in this circuit a state court judgment has collateral estoppel effect upon the same issues raised in a subsequent § 1983 action, *Winters v. Lavine*, 574 F.2d 46 (CA2 1978), collateral estoppel does not bar a subsequent action for habeas corpus.

However, a petition for habeas corpus must clear a different hurdle: exhaustion of state remedies. The exhaustion doctrine requires "a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). The Second Circuit has construed this requirement strictly, holding that a due process claim made in the state courts under the state constitution was insufficient to exhaust the petitioner's state court remedies as to his due process

claims under the federal constitution. *Johnson v. Metz*, 609 F.2d 1052 (CA2 December 4, 1979, revising withdrawn opinion of November 7, 1979). The purpose of the exhaustion requirement "is simply to ensure that the federal courts not intrude upon state proceedings unless and until the state courts have been given a fair opportunity to consider and act upon the claims on which the habeas corpus petition is based." *Twitty v. Smith*, 614 F.2d 325 at 331 (CA2 1979).

Petitioner raised his federal double jeopardy claim in his trial court motion to dismiss the indictment, denied by the July 15, 1977 decision of Justice Jones. However, this claim was not raised in the Article 78 proceeding, which focused solely on state law double jeopardy claims under NYCPL Article 40, as is shown by inspection of Mr. Troy's Article 78 petition and supporting memorandum of law (Exhibits M and L attached to the complaint). Nor was this claim raised on the appeal from the state court conviction, which involves only the excessiveness of the sentence, and not the merits of the conviction. Affidavit of David Lubash attached to the order to show cause. Thus, it appears that Mr. Troy's *federal* double jeopardy arguments, rejected by Justice Jones in his July 15, 1977 decision, were not pursued in the state courts, and were never presented to the Appellate Division.

Petitioner's claims of misconduct by the Assistant U. S. Attorney, claims rejected by Justice Jones in his July 15, 1977 decision, were similarly not appealed (the appeal involving only the alleged excessiveness of the sentence). These claims were raised in the Article 78 proceeding in the context of petitioner's state double jeopardy arguments under NYCPL Article 40. However, these claims were never raised before the Appellate Division in the context of any federal constitutional arguments. Nowhere in the papers submitted to the Appellate Division was it argued that the alleged misconduct of the federal prosecutor amounted to a violation of Mr. Troy's federal constitutional due process rights.

At the oral argument yesterday evening, counsel for Mr. Troy urged this court to hold a hearing on the misconduct of the federal prosecutor, and on a possible conspiracy between the federal prosecutor and state prosecutorial authorities. This "conspiracy" claim was not raised at any point in the state proceedings: it was not argued to the trial court, to the Appellate Division on appeal, or to the Appellate Division on the Article 78 proceeding.

It thus appears that the federal constitutional arguments raised by Mr. Troy in this court, in support of his habeas corpus petition, were not pursued in the state courts. Mr. Troy did allege in the state court proceedings the facts on which these claims rest, but these facts were alleged only in the context of state claims, not federal constitutional claims. *Johnson v. Metz* and prior cases, such as *United States ex rel. Rogers v. LaVallee*, 463 F.2d 185 (CA2 1972) [state court double jeopardy claim did not sufficiently present federal double jeopardy argument to state court] clearly indicate that plaintiff here has failed to exhaust his state remedies as to his federal constitutional claims. Before this court can consider Mr. Troy's federal constitutional claims, he may be required to raise these claims in the state courts, either in his pending application to Judge Meyer of the New York Court of Appeals and his underlying appeals from his state court conviction and the dismissal of his Article 78 proceeding, or, perhaps, in a separate proceeding under New York Criminal Procedure Law § 440.10. Recent Second Circuit cases have raised some doubts about the availability of relief under the latter section, but have nonetheless required that petitioners seek relief under it before seeking habeas corpus relief from the federal courts. *Johnson v. Metz, supra; Hoover v. State of New York*, 607 F.2d 1040 (CA2 1979).

■ Petitioner's failure to exhaust state remedies requires dismissal of his habeas corpus petition, without reaching the merits of his federal constitutional claims based on double jeopardy and misconduct by the federal prosecutors. However, it may not be inappropriate to indicate that petitioner's federal constitutional arguments on these grounds appear to be legally insufficient. See *Katharine Gibbs School (Incorporated) et al. v. Federal Trade Commission*, 612 F.2d 658 at 668 (CA2 1979).

■ The federal constitution's double jeopardy clause does not prohibit prosecutions by both state and federal authorities for crimes based on the same series of acts or events. *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) [state prosecution following federal prosecution]; *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) [federal prosecution following state prosecution]. Federal prosecutors follow a policy of not instituting federal proceedings where prior state proceedings would make this unjust or unfair. *Rinaldi v. United States*, 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977). And many states, including New York, have adopted laws and local rules and guidelines prohibiting state prosecutions following substantially similar federal prosecutions. However, these federal policies and state laws and policies are not mandated by the Constitution and do not give plaintiff a constitutional double jeopardy claim in this matter.

■ As to plaintiff's claim that the Assistant United States Attorney breached his agreement with plaintiff, this claim cannot be a basis for relief from the state court conviction. In his reply affirmation in the Article 78 proceeding, then-counsel for plaintiff stated that: "If fraud does in fact exist, then the defendant's plea in the U. S. District Court should be vacated and the Memorandum Agreement suppressed." at page 16. This indeed appears to be the proper remedy for breach of a plea bargain agreement by federal prosecutors: a motion to vacate the federal conviction. Such a breach could not be grounds for vacating the state court conviction, for "the United States Attorney had no authority * * * to plea bargain with respect to matters outside his own clear jurisdiction, particularly where such matters may have involved

other sovereignties such as the State of New York. Nor can that official's gratuitous public statement of opinion that subsequent state prosecution for any related crimes would, in his judgment, be inappropriate following the disposition in Federal Court, be seen to have been in any way binding on any state prosecutions, or indeed, on this Court." July 15, 1977 decision of Justice Howard Jones (Ex. 4 attached to the complaint in this case).

The only federal constitutional claim raised by petitioner which might be grounds for habeas corpus relief, should it be supported by the facts, is the claim, raised for the first time at oral argument, of a conspiracy between federal and state prosecutorial authorities. Such a conspiracy might constitute a violation of Mr. Troy's due process rights, and might be grounds for a federal court to grant habeas corpus relief from Mr. Troy's state court conviction. Alternatively, such a conspiracy, if proven, might support a federal double jeopardy claim that the state prosecutor "was merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment * * *" *Bartkus v. People of the State of Illinois, supra*, 359 U.S. at 123, 79 S.Ct. at 678. However, as stated above, such claims have never been raised before, certainly not in the state courts, and thus at this time cannot be considered under this court's habeas corpus jurisdiction.

### CONCLUSION

For reasons set forth above, plaintiff's "Complaint" is treated as a petition for habeas corpus, and is dismissed without prejudice due to failure to exhaust state remedies. The clerk shall enter judgment accordingly.

SO ORDERED.