Barshai ALLAH, a/k/a Allah Barshai, Petitioner,

v.

Eugene LeFEVRE, Superintendent of Clinton Correctional Facility, Respondent.

No. 85 Civ. 3678 (MEL).

United States District Court, S.D. New York.

Dec. 9, 1985.
As Amended March 3, 1986.

Philip L. Weinstein, the Legal Aid Society (Henry Winestine, of counsel), New York City, for petitioner.

Robert M. Morgenthau, Dist. Atty., New York County, (Norman Barclay, Bruce Allen, Asst. Dist. Attys., of counsel), New York City, for respondent.

LASKER, District Judge.

Petitioner Barshai Allah seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982) on the ground that his conviction was obtained in violation of his Sixth Amendment right to effective assistance of counsel. Four years ago this court dismissed a nearly identical petition by Allah for failure to exhaust state remedies. *Allah v. Henderson*, 526 F.Supp. 282 (S.D.N.Y.1981), *aff'd mem.*, 697 F.2d 287 (2d Cir. 1982). We conclude that an evidentiary hearing is necessary and appropriate under the circumstances in order to develop the factual record.

### I.

As stated in the earlier decision:

Allah was convicted of robbery, assault, and criminal possession of a weapon on September 7, 1977, following a trial by jury in the Supreme Court of New York County. The conviction was affirmed by the Appellate Division, First Department, *sub nom. People v. Barshai*, 72 A.D.2d 503, 420 N.Y.S.2d 526 (1979). Leave to appeal to the New York Court of Appeals was denied by certificate dated November 26, 1979.

Allah and his co-defendant, Wise Gillette ("Gillette") were arrested together approximately an hour after the robbery in question. According to the police officers' testimony, at the time of the arrest Allah and Gillette were in possession of property which was later determined to be the proceeds of the robbery. Prior to trial, Gillette, who was represented by separate counsel, moved to suppress the property found in his possession. A hearing was held on Gillette's suppression motion at which one of the arresting officers stated that Gillette and Allah were stopped "because they looked like two suspicious black males in a predominantly white neighborhood." Gillette's

motion was granted on the grounds that, at the time of the stop, the police officers did not have "a founded suspicion or reasonable belief that the defendant was armed or otherwise engaged in any criminal activity." The indictment against Gillette was ultimately dismissed. Allah's attorney did not join in Gillette's motion to suppress, nor did he make a separate suppression motion after Gillette's motion was granted.

At Allah's trial, the only witnesses were the arresting officers, a witness to the arrest, and the victim. The victim was unable to identify Allah (see Trial Transcript at 55, Colloquy, Assistant District Attorney Kosloff: "Well, Judge, obviously this witness cannot make an identification.") There were no witnesses to the incident other than the victim. Thus, the only evidence presented at trial which linked Allah to the robbery was the stolen property.

*Allah v. Henderson*, 526 F.Supp. at 283.

In the present petition, as in the previous one, Allah contends that his constitutional right to effective assistance of counsel was violated by the failure of his attorney to move to suppress the physical evidence that Allah argues was the fruit of an illegal stop. Allah maintains that since his co-defendant's suppression motion was granted based on facts similar to those surrounding his own arrest, had his own attorney made a suppression motion it would likely have been successful. Allah also urges that but for his attorney's omission he would not have been convicted because a successful suppression motion would have removed from the case the only evidence linking him to the crime.

The prior habeas petition was dismissed because:

[O]n th[e] record [before the court] it [was] simply not possible to divine what strategy impelled counsel to refrain from making the suppression motion in question. In the absence of any clue as to counsel's motivation, the question of the adequacy of Allah's counsel [could not] be properly resolved.

*Allah v. Henderson,* 526 F.Supp. at 284. Because the exhaustion requirements contained in 28 U.S.C. § 2254 had not been met, that is, because the additional, necessary facts had not been presented to the state courts, the petition was dismissed. *Id.* at 284–85.

Following dismissal of his habeas petition, Allah returned to the state courts and raised his ineffective assistance claim in a motion to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law § 440.10(1)(h) (McKinney 1983). Included in the moving papers was an affirmation by Allah's present counsel stating that he had learned by telephone from petitioner's former trial attorney that although the latter had been aware of the co-defendant's successful suppression motion, he believed Allah lacked standing to move to suppress. Petitioner's Memorandum of Law at 11–12. Without holding an evidentiary hearing, Justice Rothwax of the New York Supreme Court denied the motion in an oral opinion on April 11, 1983.

On appeal, the Appellate Division unanimously affirmed the lower court's decision. *People v. Barshai,* 100 A.D.2d 253, 474 N.Y.S.2d 288 (1st Dept.1984). In his opinion for the court, Judge Sandler concluded that "in the then existing state of the law, defense counsel had a solid basis for the judgment that defendant lacked standing to move to suppress items of property which he denied owning or possessing," *id.* at 256, 474 N.Y.S.2d at 290, and that the trial attorney "could reasonably have believed that a motion to suppress, even if the standing obstacle was overcome, had little chance of success," *id.* at 261, 474 N.Y.S.2d at 293. Notwithstanding the decision to reject Allah's ineffective assistance claim, Judge Sandler recognized "that the central importance of the items of evidence in question to the outcome of defendant's trial was such that any reasonable doubt counsel entertained as to the viability of a motion to suppress should have been resolved in favor of making the motion." *Id.*

at 256, 474 N.Y.S.2d at 289–90. Moreover, Judge Sandler acknowledged as "troublesome" and "disquieting" the fact that Allah's co-defendant did not confront standing obstacles in making his motion to suppress. *Id.* at 261, 474 N.Y.S.2d at 292. Presiding Judge Murphy and Judge Carro concurred in a brief opinion by Presiding Judge Murphy. *Id.* at 262, 474 N.Y.S.2d at 293.

Leave to appeal to the New York Court of Appeals was denied. 62 N.Y.2d 804, 477 N.Y.S.2d 1028, 465 N.E.2d 1271 (1984). The Supreme Court denied a petition for certiorari on October 9, 1984. —— U.S. ——, 105 S.Ct. 257, 83 L.Ed.2d 193 (1984).

## II.

■ Although the decision of this court dismissing Allah's prior habeas petition had as its objective a development of the facts, the factual record in Allah's eight-year odyssey through the state and federal courts continues to lack actual evidence as to the reasons for his trial counsel's failure to make a suppression motion. Nevertheless, the state courts had the opportunity to pass on both the legal and factual aspects of the constitutional claim when the petitioner's N.Y.CRIM.PROC.L. § 440.10 motion placed the issue squarely before them. Consequently, Allah is found to have exhausted his state remedies. The State does not argue to the contrary.

## III.

The decision on Allah's earlier habeas petition, in addition to ruling on the exhaustion issue, also briefly considered the State's argument that petitioner's claim was not cognizable in a federal habeas corpus proceeding under the rule of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), as interpreted in *LiPuma v. Commissioner,* 560 F.2d 84 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977). The State renews this argument in the present proceeding.[1]

---

**1.** Both parties have also briefed the issue of whether Allah's trial counsel was ineffective,

under the governing standard announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct.

In *Stone v. Powell* the Supreme Court held that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

428 U.S. at 494, 96 S.Ct. at 3052 (footnotes omitted). Just a year later, the Court of Appeals for the Second Circuit in *LiPuma v. Commissioner, supra,* considered a habeas challenge in which the petitioner claimed his Sixth Amendment right to effective assistance of counsel had been violated by his attorney's alleged incompetence in failing to make a suppression motion until mid-trial, at which time it was barred as untimely.

Although the Court of Appeals in *LiPuma* engaged in a full analysis of the petitioner's claim under the law then governing effective assistance of counsel before concluding that his constitutional rights had not been violated, the panel held in a brief, penultimate paragraph that "a full and fair consideration was given to all of the issues in this case by the courts of the State of New York and the case comes within the holding of *Stone v. Powell.*" 560 F.2d at 93. The panel explained its reasoning in a footnote:

> The fact that petitioner's claim is ostensibly grounded on the Sixth, rather than the Fourth, Amendment does not negate *Stone's* applicability, because at the heart of this case lies an alleged Fourth Amendment violation.... The same remedy of exclusion is now sought by way of a collateral habeas corpus proceeding, where a Sixth Amendment claim has been added for good measure.

*Id.* at 93 n. 6.

Basing its argument on *LiPuma,* the State contends, as it did on the earlier petition, that since Allah's ineffective assistance claim is grounded in an alleged

Fourth Amendment violation, he is barred from seeking habeas corpus review.

In response, Allah advances two alternative arguments that *LiPuma* does not preclude a habeas court from hearing a Sixth Amendment claim based on counsel's failure to make a suppression motion. He contends first that, notwithstanding *LiPuma,* under *Stone v. Powell* a Fourth Amendment claim may always be considered in a habeas corpus proceeding if the petitioner did not have the opportunity for full and fair litigation of the claim in the state courts, and that he did not have such an opportunity. Second, Allah contends that the portion of *LiPuma* that construes *Stone v. Powell* is not only dictum but also distinguishable from the instant case on its facts and erroneously decided.

### A.

Allah's first argument rests on a questionable reading of the decision of the Second Circuit Court of Appeals in *Gates v. Henderson,* 568 F.2d 830 (2d Cir.1977), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). *Gates* was an *en banc* decision on the question of whether a habeas petitioner who had raised a Fourth Amendment issue for the first time on appeal of his New York state conviction, and who had been deemed by the New York Court of Appeals to have waived his claim (under the state's then applicable procedural law) by not making a contemporaneous objection at trial, had been given the opportunity for full and fair litigation of his Fourth Amendment claims in the state courts under the rule laid down in *Stone v. Powell.* The court concluded that he had and that federal habeas corpus relief was therefore unavailable. In reaching this result the court held that habeas review would be appropriate only in limited circumstances:

> If the state provides no corrective procedures at all to redress Fourth Amendment violations, federal habeas corpus

2052, 80 L.Ed.2d 674 (1984). Because we have decided to hold an evidentiary hearing to hear the testimony of Allah's trial counsel, we do not

reach the issue of ineffective assistance at this time.

remains available. It may further be that even where the state provides the process but in fact the defendant is precluded from using it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted.

*Gates v. Henderson,* 568 F.2d at 840 (citations omitted).

Allah does not contend that New York lacks the corrective procedures for the redress of Fourth Amendment violations. Rather, he focuses on the words, "unconscionable breakdown," and argues that ineffective assistance of counsel constitutes such a breakdown. Though petitioner cites no subsequent cases interpreting the concept of an "unconscionable breakdown" of available corrective procedures, he suggests that *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), provides guidance in this area.

In *Sykes* the Supreme Court held that a procedural default such as petitioner's failure to move to suppress at trial, which has the effect of preventing the state courts from ever considering a defendant's claim on the merits because of a state contemporaneous objection rule, would foreclose federal habeas review unless both "cause" for failure to object at trial and "actual prejudice" from the admission of the challenged evidence could be established. 433 U.S. at 90–91, 97 S.Ct. at 2508–09. The Court also stated that it believed its holding would "not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudication will be the victim of a miscarriage of justice." *Id.* at 91, 97 S.Ct. at 2508; *see also Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982) ("cause" and "actual prejudice" not rigid concepts; "those principles must yield to the imperative of correcting a fundamentally unjust incarceration").

Petitioner here maintains that he has satisfied the "prejudice" factor of the *Sykes* standard because the evidence he would have had suppressed was the only evidence

that linked him to the crime of which he was convicted. The "cause" factor is also satisfied, Allah contends, because ineffective assistance of counsel that rises to the level of a Sixth Amendment violation constitutes "cause" under the law of this circuit. *See, e.g., Cantone v. Superintendent,* 759 F.2d 207, 218 (2d Cir.1985); *Tsirizotakis v. LeFevre,* 736 F.2d 57, 62 (2d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984).

The sum of his argument, according to Allah, is that ineffective assistance of counsel constitutes "cause" under *Sykes,* which is the equivalent of *Gates'* "unconscionable breakdown" exception, which in turn would indicate that he has not been afforded a full and fair opportunity to litigate his claim in the state courts.

Allah's chain of reasoning breaks, however, in its attempt to link ineffective assistance of counsel to an unconscionable breakdown in state procedures for correcting Fourth Amendment violations. First, it is plain from the majority opinion in *Gates* that the Court of Appeals had something other than ineffective assistance of counsel in mind when it speculated that an unconscionable breakdown in state process might permit federal habeas review. 568 F.2d at 840. The court followed its speculation with citations to the case of *Frank v. Mangum,* 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (Holmes, J. and Hughes, J., dissenting), a Supreme Court refusal to grant a writ of habeas corpus to a petitioner convicted of murder in a state trial claimed to have been dominated by an angry mob—a decision which the later lynching of the petitioner and history, *see, e.g.,* L. Dinnerstein, *The Leo Frank Case* (1968), has overruled—and to a law review article in which the author suggests situations such as the bribing of a trial judge, the prosecution's knowing use of perjured testimony, and a guilty plea extracted by torture that would justify federal habeas corpus inquiry, Bator, *Finality in Criminal Law and Federal Habeas Corpus For State Prisoners,* 76 Harv.L.Rev. 441, 457 (1963). Such references by the *Gates* court carry no implication that either ineffective assistance of

counsel, specifically, or the entire range of problems encompassed by "cause" under *Sykes*, generally, was envisioned as falling within the "unconscionable breakdown" exception to the general rule precluding federal habeas consideration if state corrective procedures are available.

Second, were petitioner's interpretation of the decision in *Gates* to be accepted, the contemporaneous holding in *LiPuma*[2] barring federal habeas consideration of Sixth Amendment ineffective assistance claims grounded in Fourth Amendment objections would be drained of meaning. This is so because under Allah's reasoning any such colorable Sixth Amendment claim would constitute an "unconscionable breakdown" of state redress procedures under *Gates* and thereby in all cases permit (assuming a showing of actual prejudice) the very habeas corpus review that *LiPuma* precludes.

Accordingly, petitioner's first argument fails.

## B.

Allah's second argument—that *LiPuma* should not bar consideration of his habeas challenge—is, as we previously found in *Allah*, "not without force." 526 F.Supp. at 286. It is certainly arguable that *LiPuma*'s construction of *Stone v. Powell* was dictum rather than an alternative holding, coming as it does in a single paragraph and footnote at the end of a nine-page opinion. *See LiPuma*, 560 F.2d at 93 & n. 6. In addition, Allah's situation could be considered distinguishable from the facts of *LiPuma* in that his Sixth Amendment claim is not a subterfuge, as the Court of

Appeals perceived LiPuma's to be. *Id.* at 93 n. 6 ("a Sixth Amendment claim has been added for good measure"). Moreover, as stated in the earlier opinion in this case, *LiPuma*'s construction of *Stone v. Powell* is not entirely persuasive:

Were we writing on a fresh slate, we would conclude that *Stone* ... does not bar a federal habeas claim in which the allegation is that the petitioner has been denied a fair opportunity to litigate his claim due to the incompetence of his counsel; that is, that a bar against hearing a Fourth Amendment claim does not automatically preclude consideration of a Sixth Amendment claim which relates to a suppression matter.

*Allah*, 526 F.Supp. at 285–86.[3] Indeed, the only circuit courts of appeals other than the *LiPuma* court to have decided this issue[4] have held that *Stone v. Powell* does not bar federal habeas consideration of Sixth Amendment issues that are based on counsel's alleged failure to advance Fourth Amendment claims. *Morrison v. Kimmelman*, 752 F.2d 918, 920–22 (3d Cir.), *cert. granted*, — U.S. —, 106 S.Ct. 59, 88 L.Ed.2d 47 (1985); *Sallie v. State of North Carolina*, 587 F.2d 636, 640 (4th Cir.1978), *cert. denied*, 441 U.S. 911, 99 S.Ct. 2009, 60 L.Ed.2d 383 (1979).

Despite the foregoing analysis, as we read *LiPuma* now and as we read it on the prior petition, *see Allah*, 526 F.Supp. at 286, it appears to be binding Second Circuit authority in this case. The rule stated in *LiPuma* as an alternative holding is framed broadly enough to encompass the facts of the instant case and would therefore preclude a habeas challenge such as

---

**2.** *LiPuma* and *Gates* were decided within six weeks of each other, on July 11, 1977 and August 19, 1977 respectively. The majority opinion in *Gates* was written by Judge Mulligan, the only member of the panel that decided *LiPuma* who participated in the decision of *Gates*.

**3.** In this regard, petitioner makes the point that *LiPuma* may have been premised upon an error in logic to the extent that

it was decided on the expressed assumption that LiPuma was seeking suppression in the habeas proceeding. However, the relief sought was not suppression, but only the op-

portunity for a suppression hearing in the state court, as the court itself noted in reciting the relief granted by the district court, 560 F.2d at 85.

Petitioner's Memorandum of Law at 23.

**4.** Courts of appeals in two other circuits have noted doubt on the issue but did not decide the question because they found the petitioners' Sixth Amendment claims to be without merit. *See Ryder v. Morris*, 752 F.2d 327, 330–31 (8th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 2660, 86 L.Ed.2d 276 (1985); *Christian v. McKaskle*, 731 F.2d 1196, 1199 (5th Cir.1984).

Allah's. The Supreme Court, however, has agreed to review the very issue of whether *Stone v. Powell* bars consideration of a petition such as Allah's. *Kimmelman v. Morrison,* —— U.S. ——, 106 S.Ct. 59, 88 L.Ed.2d 47 (1985).

 In light of this development, the imminent resolution by the Supreme Court of the controlling issue in this case, it is not appropriate to decide the issue at this time. In the interim, in order to shorten the time consumed in the ultimate disposition of Allah's petition should the Supreme Court rule that federal habeas consideration is not precluded under these circumstances, an evidentiary hearing will be held to hear the testimony of Allah's trial counsel on the reasons for his not making a suppression motion.

## IV.

 An evidentiary hearing in this case is appropriate. In *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Supreme Court, after describing the situations in which the holding of an evidentiary hearing in a habeas corpus proceeding was mandatory,[5] stated:

> In all other cases where the material facts are in dispute, the holding of such a hearing is in the discretion of the district judge.... In every case he has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim.

372 U.S. at 318, 83 S.Ct. at 760. The Court of Appeals for this circuit has strongly urged district judges in habeas proceedings to "hold an evidentiary hearing and develop a full factual record" so as to reveal "trial counsel's reasons for foregoing a suppres-

sion motion." *United States v. Aulet,* 618 F.2d 182, 186 (2d Cir.1980). *See also Walker v. Wilmot,* 603 F.2d 1038, 1041–42 (2d Cir.1979) (constitutionality of confession), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980).

There can be little dispute as to the existence of a factual lacuna in the record of this case. As Judge Sandler commented in his opinion affirming the denial of Allah's motion to vacate the judgment of conviction, "The record is regrettably silent as to what, if any, had been the direct experience and observation of defendant's trial counsel...." *People v. Barshai,* 100 A.D.2d 253, 258, 474 N.Y.S.2d 288, 291 (1st Dept. 1984).

The evidence adduced at the hearing at which Allah's trial counsel will testify may well decide and will certainly inform the difficult question of whether the attorney's assistance was effective or not. *See Healy v. Malcolm,* 496 F.Supp. 941, 943 (S.D.N.Y. 1980). That Allah raises a serious ineffective assistance claim justifying such an evidentiary hearing can be gleaned from the State's admission at oral argument that "nine out of ten attorneys would have made the motion" to suppress. *See also People v. Barshai,* 100 A.D.2d at 256, 474 N.Y.S.2d at 289–90 (central importance of items of evidence in question to the outcome of the trial was such that reasonable doubt as to viability of suppression motion should have been resolved in favor of making the motion).

Accordingly, the matter will be set down to hear the testimony of petitioner's trial counsel as to the reasons for his not making a suppression motion.

It is so ordered.

---

**5.** The Court held that

> a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

> *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). It is unnecessary to decide whether the instant case falls under any of the "mandatory" *Townsend* circumstances.